# LINEHAN DECLARATION

# EXHIBIT 36

## FINANCIAL INDUSTRY REGULATORY AUTHORITY
## OFFICE OF HEARING OFFICERS

| | |
|---|---|
| Department of Enforcement,<br><br>                    Complainant,<br><br>v.<br><br>Johnny E. Burris,<br>CRD No. 2850953,<br><br>                    Respondent. | Disciplinary Proceeding<br>No. 2015044921601<br><br>Hearing Officer: MJD<br><br>**ORDER ACCEPTING OFFER OF<br>SETTLEMENT**<br><br>Date: April 7, 2017 |

## INTRODUCTION

Disciplinary Proceeding No. 2015044921601 was filed on September 15, 2016, by the Department of Enforcement of the Financial Industry Regulatory Authority (FINRA) (Complainant). Respondent Johnny E. Burris submitted an Offer of Settlement (Offer) to Complainant dated April 6, 2017. Pursuant to FINRA Rule 9270(e), the Complainant and the National Adjudicatory Council (NAC), a Review Subcommittee of the NAC, or the Office of Disciplinary Affairs (ODA) have accepted the uncontested Offer. Accordingly, this Order now is issued pursuant to FINRA Rule 9270(e)(3). The findings, conclusions and sanctions set forth in this Order are those stated in the Offer as accepted by the Complainant and approved by the NAC.

Under the terms of the Offer, Respondent has consented, without admitting or denying the allegations of the Complaint, as amended by the Offer of Settlement, and solely for the purposes of this proceeding and any other proceeding brought by or on behalf of FINRA, or to which FINRA is a party, to the entry of findings and violations consistent with the allegations of

EXHIBIT  46
WITNESS  Burris
DATE     3 12 20
CARRIE A. CARIATI RPR CRR

the Complaint as amended by the Offer of Settlement, and to the imposition of the sanctions set forth below, and fully understands that this Order will become part of Respondent's permanent disciplinary record and may be considered in any future actions brought by FINRA.

## BACKGROUND

Burris first became registered with FINRA in 1997. Burris was registered with three FINRA member firms before becoming registered as a General Securities Representative at CISC in June 2010. On October 1, 2012, Burris's registration was transferred to J.P. Morgan Securities, LLC ("JPMS") as part of a mass transfer. Burris remained registered at JPMS until JPMS terminated his employment on November 6, 2012. Burris was subsequently registered with two additional FINRA-member firms until he most recently terminated his registration in June 2015. Although Burris is no longer registered or associated with a FINRA member, he remains subject to FINRA's jurisdiction for purposes of this proceeding, pursuant to Article V, Section 4 of FINRA's By-Laws, because the Complaint was filed within two years after the effective date of termination of Burris's registration with his most recent member firm, namely, June 2, 2015, and the Complaint charges him with misconduct committed while he was registered or associated with a FINRA member.

## FINDINGS AND CONCLUSIONS

It has been determined that the Offer be accepted and that findings be made as follows:

### FACTS

1. In early April 2012, the customers instructed Burris to liquidate one of their securities holdings to fund a tax payment to the IRS.

2

2. Specifically, they requested that Burris sell sufficient shares of a Franklin Templeton mutual fund (FAZIX) to generate proceeds of approximately $26,500.

3. Burris failed to execute the trade.

4. As a result, the customers' tax payment of almost $24,000 was rejected.

5. On April 17, 2012, JPMorgan Chase Bank sent a letter to the customers informing them that their tax payment had been rejected because of "insufficient funds in [their] account."

6. On April 19, 2012, the IRS sent the customers a letter informing them that their electronic payment had been rejected and that they could be subject to "interest and penalty charges" for failure to pay their taxes on time.

7. On April 23, 2012, the customers went to Burris's office at the firm's Sun City West branch and informed him that their tax payment had been rejected for insufficient funds.

8. During Burris's conversation with the customers on April 23, 2012, Burris acknowledged his error in not executing the trade they had ordered, and told the customers that he would "take care of" their issue.

9. Burris requested of personnel of JPMorgan Chase Bank that the customers' nonsufficient funds fee imposed by said bank be removed from the customers' bank account. Bank personnel thereafter removed said fee.

10. With authority from the customers, Burris executed a new trade, selling approximately 2,356 shares of FAZIX, resulting in proceeds of $26,772, which was sufficient to pay the customers' tax liability.

11. At the customers' request, Burris then assisted the customers in transferring $26,500 into their account at JPMorgan Chase Bank, obtaining a cashier's check, and sending the check to the IRS "via overnight mail."

12. On April 27, 2012, Burris wrote a letter to the customers stating, "I want to apologize for the error that has caused your tax payment to be rejected. That has since been remedied with the copy of the enclosed cashier's check dated April 27th, 2012. . . . You can be assured, if there are any tax penalties and/or interest, please bring them to my attention. I will have those remedied."

13. On May 4, 2012, Burris sent a letter to the IRS, on what appeared to be official CISC letterhead, claiming that the insufficient funds issue was a result of "an error on the part of the bank" and requested that the IRS forgive the fees and interest as "a professional courtesy."

14. Burris did not, at any time, inform anyone at CISC of his failure to execute the customers' trade, or his independent efforts to resolve their complaint, including his oral conversations with the customers regarding their complaint, his April 17, 2012 letter to the customers, or his May 4, 2012 letter to the IRS.

15. Burris also did not obtain supervisory review or approval for either of the two outgoing letters described above nor did he keep copies of the letters in firm outgoing correspondence files or in the customers' file.

16. Burris's supervisor learned of the customers' complaint when they came to the Sun City West branch office on September 14, 2012 to advise Burris of the final amount the tax penalties and interest charges assessed by the IRS, which was about $50 less than it originally invoiced.

17. Because Burris was on vacation, the customers spoke with an assistant in the office who escalated their complaint to Burris's manager.

18. The firm compensated the customers $623.56 for their tax penalties and interest.

### Failure to Execute a Trade (FINRA Rule 2010)

19. The Department realleges and incorporates by reference paragraphs 1-27 above.

20. FINRA Rule 2010 requires registered representatives, in the conduct of their business, to observe high standards of commercial honor and just and equitable principles of trade.

21. A registered representative violates Rule 2010 by failing to follow customer instructions to sell a security, regardless of the broker's intent or motive.

22. By failing to execute the customers' early-April 2012 liquidation of FAZIX as directed, Burris violated Rule 2010.

### Settling a Customer Complaint Away from the Firm (FINRA Rule 2010)

23. A registered representative violates Rule 2010 by settling or attempting to settle a customer complaint without notifying the representative's member firm.

24. The customers' notification to Burris that their tax payment failed because of Burris's failure to execute their ordered trade was a customer complaint, and therefore, Burris's actions described above were an effort by him to resolve the customers' complaint himself, without informing his supervisor at the firm.

25. As alleged above, Burris:

    a. verbally informed the customers on April 23, 2012 that he would "take care of" their issue;

    b. executed a new trade;

    c. had a cashier's check drafted and sent that check to the IRS to satisfy the customers' remaining tax liability;

    d.  sent the customers a letter on April 27, 2012 apologizing for his error and assuring them he would remedy any fees or penalties that may have resulted from his error; and

    e.  sent the IRS a letter on May 4, 2012 requesting that the IRS forgive the customers' fees and penalties.

  26.  By not informing his firm of the existence of the customers' complaint and of his efforts to settle the customers' complaint, Burris violated Rule 2010.

<b>Use of Unapproved Communications (FINRA Rule 2010)</b>

  27.  A registered representative violates Rule 2010 though use of unapproved communications.

  28.  CISC's Code of Conduct prohibited an employee from "sign[ing] any documents or otherwise represent[ing] the Company, or authoriz[ing] any action on the Company's behalf, unless specifically authorized to do so."

  29.  CISC's applicable written procedures:

    a.  prohibited registered representatives from "settl[ing] client complaints or reimburs[ing] or offer[ing] to reimburse a client" without prior authorization;

    b.  stated that outgoing correspondence to customers must be on "approved Firm letterhead" that included specific disclaimers;

    c.  stated that outgoing correspondence included all "written communications prepared for delivery to a single (current or prospective) client and not for distribution to multiple clients or the general public" and such outgoing correspondence must be "reviewed and approved by the RR's Designated

6

        Supervisory Principal, prior to sending the correspondence to the client;" and

    d. required registered representatives to maintain an outgoing correspondence file of all "outgoing correspondence (including faxes) related to the securities business of the Firm, which may include both client and prospective client correspondence in addition to other business correspondence. Designated Supervisory Principal approval is required for all outgoing correspondence PRIOR to sending the item."

30. In connection with his attempt to settle the customers' complaint away from his firm, Burris created and sent the above alleged April 17, 2012 letter to the customers and the May 4, 2012 letter to the IRS.

31. For each letter, Burris used letterhead that appeared to be official, firm-sanctioned CISC letterhead even though it was not.

32. The letterhead Burris used did not include all the firm's required disclaimers.

33. Both the April 17, 2012 and the May 4, 2012 letters were outgoing correspondence that Burris should have submitted to his Designated Supervisory Principal for review and approval prior to sending.

34. Burris did not, at any time, submit either letter to His Designated Supervisory Principal for review and approval prior to sending. As a result he did not obtain supervisory review or approval to send either letter to its intended recipient.

35. Further, by using what appeared to be firm letterhead, Burris made it seem that CISC had authorized the letters and their contents, when it had not.

36. By using unapproved communications with customers, Burris violated Rule 2010.

7

Based on these considerations, the sanctions hereby imposed by the acceptance of the Offer are in the public interest, are sufficiently remedial to deter Respondent from any future misconduct, and represent a proper discharge by FINRA, of its regulatory responsibility under the Securities Exchange Act of 1934.

## SANCTIONS

It is ordered that Respondent be fined $5,000 and suspended from association with any FINRA member in any capacity for a period of five business days. The fine shall be due and payable either immediately upon re-association with a member firm, or prior to any application or request for relief from any statutory disqualification resulting from this or any other event or proceeding, whichever is earlier.

The sanctions imposed herein shall be effective on a date set by FINRA staff.

SO ORDERED.

FINRA

Signed on behalf of the
Director of ODA, by delegated authority

Jeffrey Pariser
Chief Litigation Counsel
FINRA Department of Enforcement
15200 Omega Drive, 3rd Floor
Rockville, MD 20850
T: 301.258.8567
M: 202. 460.9857
F: 202.721.1348
Jeffrey.pariser@finra.org

8