**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny E Burris, | No. CV-18-03012-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| JPMorgan Chase & Company, et al., | |
| Defendants. | |

## INTRODUCTION

In this action, Johnny Burris ("Plaintiff"), a former employee of J.P. Morgan Chase & Co. and J.P. Morgan Securities, LLC (together, "Defendants"), accused Defendants of violating the whistleblower retaliation provisions of the Sarbanes-Oxley Act of 2002 and the Dodd-Frank Act of 2010 when terminating his employment. However, Plaintiff's claims were never resolved on the merits. In an October 2021 order, the Court dismissed Plaintiff's claims because he had "destroy[ed] electronically stored information ('ESI') from an array of phones, laptops, email accounts, and external storage devices" and had been "caught red handed in a series of other lies and acts of deception during the forensic examination process." (Doc. 110 at 1, 26.) The Court explicitly found that Plaintiff acted in bad faith and, in doing so, violated an October 2020 order. (*Id.* at 30-31.) Because "[t]he sheer scope of Plaintiff's dishonesty and spoliation efforts . . . [made] this the rare case where it is impossible to have confidence that Defendants will ever have access to the true facts," and because Plaintiff displayed no obvious contrition or awareness of the

wrongfulness of his actions, the Court granted Defendants' motion for terminating sanctions and dismissed Plaintiff's complaint with prejudice. (*Id.* at 31-32.)

Now pending before the Court are (1) Defendants' motion for an award of attorneys' fees (Doc. 122), which contains a request that Plaintiff be made to post a bond; and (2) Defendants' motion to modify the clerk's judgment on taxation of costs (Doc. 135). For the reasons that follow, the substance of Defendants' motion for attorneys' fees is granted—although the request for bond is denied—and the motion to modify the clerk's judgment is granted in full.

## BACKGROUND

The background details of this case are set forth in the Court's October 7, 2021 order (Doc. 110) and are repeated below insofar as they are relevant to the current disputes.

On September 24, 2018, Plaintiff initiated this action by filing the complaint. (Doc. 1.)

On October 1, 2019, the Court granted the parties' stipulated protective order, which sought to "facilitate document production and disclosure and to protect the respective interests of the parties in their confidential information." (Doc. 30 at 1.)

On March 18, 2020, the Court granted the parties' request to adopt the first addendum to the stipulated protective order, which allowed third-party service providers to produce certain records and information pertaining to Plaintiff. (Doc. 35.)

On October 29, 2020, the Court granted the parties' request to adopt the second addendum to the stipulated protective order. (Doc. 61.) The second addendum called for the appointment of "an independent expert qualified in digital forensics and electronic discovery" to "serve as an Officer of the Court" and authorized that expert to "hire other outside support if necessary to Forensically Collect from Plaintiff's Electronic Media, so long as the outside support also signs and agrees to be bound by the Stipulated Protective Order, as modified by this Second Addendum." (*Id.* at 3.) It also ordered Plaintiff to "provide the expert and Defendants a list identifying all his Electronic Media that at any point contained Potentially Relevant ESI." (*Id.* at 4.) The expert was instructed, upon

Defendants' request, to "investigate and advise the parties and/or the Court whether . . . Potentially Relevant ESI was deleted, manipulated, removed from, or concealed from detection on Plaintiff's Electronic Media." (*Id.* at 5-6.) Plaintiff was warned that "Defendants may seek . . . appropriate sanctions up to and including default . . . if Plaintiff: unreasonably fails to identify or provides misleading information concerning his Electronic Media and Potentially Relevant ESI; obstructs, attempts to evade, or unduly delays the . . . efforts as provided herein; deleted or failed to preserve Potentially Relevant ESI while under a duty to preserve it; or engaged in any other discovery misconduct." (*Id.* at 8.)

On April 22, 2021, the parties submitted the forensic report from the court-appointed expert. (Doc. 73-1.) The parties also advised the Court that Defendants would be filing an opposed motion for case-terminating sanctions based on the findings in the report. (Doc. 73 at 2.) The parties explained that "[t]o streamline briefing, the parties agreed (subject to the Court's approval) to focus their initial briefing on whether dismissal is an appropriate sanction and then, depending on the Court's ruling regarding dismissal, questions related to costs and/or lesser sanctions may be determined afterward." (*Id.*)

On July 9, 2021, Defendants filed a motion for terminating sanctions. (Doc. 78.) Although it was initially filed with redactions, an unsealed version was later filed. (Doc. 84.)

On October 7, 2021, the Court grated Defendants' motion for sanctions and dismissed Plaintiff's complaint with prejudice. (Doc. 110.)

On October 20, 2021, the parties jointly moved to extend the deadline for Defendants' bill of costs and motion seeking attorneys' fees. (Doc. 112.) This request was granted and the deadline was extended to November 4, 2021. (Doc. 113.)

On November 2, 2021, Plaintiff filed a notice of appeal. (Doc. 114.)

On November 3, 2021, Defendants filed an unopposed second motion to extend the deadline for their bill of costs and motion seeking attorneys' fees. (Doc. 116.) This motion stated that the parties "had been engaging in discussions to resolve any remaining issues in this case including Defendants' request for costs and attorneys' fees. . . . While the parties

had made progress, Plaintiff, apparently acting without the assistance or knowledge of his counsel, suddenly decided to file a Notice of Appeal on November 2, 2021, and to cease engaging in further settlement discussions." (*Id.* at 1-2.) This request was granted and the deadline was extended to November 18, 2021. (Doc. 118.)

On November 9, 2021, Plaintiff's counsel filed an unopposed motion to withdraw. (Doc. 119.) Counsel asserted that "at least one of" two criteria from counsel's written retainer with Plaintiff permitted withdrawal: counsel "may terminate its representation of the Client in this matter if in its judgment: (a) further proceedings would be frivolous, unreasonable or groundless, [or] (d) if the Client engages in actions that are contrary to [counsel's] advice such that irreconcilable conflicts develop between [counsel] and client." (*Id.* at 1.)

On November 15, 2021, the Court granted counsel's motion to withdraw. (Doc. 120.)

On November 18, 2021, Defendants filed a bill of costs totaling $68,135.09 (Doc. 121), an itemization of requested costs by date and category (Doc. 121-1), and a compilation of invoices (Doc. 121-2).

That same day, Defendants filed a motion for attorneys' fees. (Doc. 122.) As discussed in more detail below, Defendants seek $296,490.50 in fees with a contingency that Defendants may be awarded additional reasonable expenses based on the outcome of Plaintiff's appeal. (*Id.* at 9.) The filing included a statement of consultation (Doc. 122-1) and information about defense counsel's roles and qualifications alongside a task-based itemized statement of fees (Doc. 122-2).

On December 2, 2021, December 30, 2021, and January 18, 2022, Plaintiff moved for extensions of time to respond to Defendants' motion for attorneys' fees and bill of costs. (Docs. 123, 127, 129.) All of these requests were granted and the deadline was eventually extended to January 25, 2022. (Docs. 125, 128, 130.)

On January 25, 2022, Plaintiff filed an opposition to the motion for attorneys' fees (Doc. 131) and objection to the bill of costs (Doc. 132).

On February 1, 2022, Defendants filed a reply in support of their motion for attorneys' fees. (Doc. 133.)

On February 18, 2022, the Clerk of Court taxed $29,210.50 in costs for Defendants and against Plaintiff. (Doc. 134.)

On February 24, 2022, Defendants filed a motion to modify the Clerk's judgment on taxation of costs "to award Defendants certain costs incurred by TERIS, LLC and Peak Forensics as a result of the court-ordered forensic examination." (Doc. 135 at 1.)

On April 11, 2022, the Court issued an order soliciting supplemental briefing regarding Defendants' request for attorneys' fees. (Doc. 136.)

On May 5, 2022, the parties filed their supplemental briefs. (Docs. 139, 140.)

**DISCUSSION**

I. Motion For Attorneys' Fees

    A. **The Parties' Arguments**

Defendants seek an award of attorneys' fees pursuant to Federal Rule of Civil Procedure 37(b) and/or the Court's inherent powers. (Doc. 122 at 4.) First, Defendants contend they are entitled to fees under Rule 37(b) because Plaintiff violated a court order (*i.e.,* the Court's October 29, 2020 order adopting the second addendum to the stipulated protective order) willfully and in bad faith. (*Id.* at 5.) Second, Defendants contend the Court may award sanctions in the form of attorneys' fees under its inherent powers because those fees would not have been incurred but for Plaintiff's bad-faith spoliation and dishonesty. (*Id.* at 5-8.) Defendants request $296,490.50 in fees and set forth the basis for that calculation, which they defend as reasonable given defense counsel's expertise, longtime business relationship with Defendants, and steps to mitigate expenses and the scope of Plaintiff's obstruction. (*Id.* at 8-12.) Finally, Defendants ask the Court to require Plaintiff to post a bond during his appeal. (*Id.* at 12.)

In his response, Plaintiff disputes both the Court's power to award fees and the reasonableness of Defendants' request. (Doc. 131.) First, as for the availability of fees, Plaintiff argues: (1) no federal statute provides for an allowance of attorneys' fees in this

situation (*id.* at 4-5); (2) Defendants forfeited their ability to seek fees by failing to include a fee request in their motion for terminating sanctions, and the current request "is essentially seeking reconsideration of the [October 2021] sanctions order to add fees and costs to the discovery sanction already imposed" (*id.* at 5-6); (3) attorneys' fees are unavailable under the text of Rule 37(e) (*id.* at 6-8); (4) attorneys' fees are unavailable under Rules 37(a)-(d) or (f) because the Court did not apply those provisions in its October 2021 order (*id.* at 8-9); and (5) attorneys' fees are unavailable under the Court's inherent authority because the Court already declined to levy sanctions and reversing itself would be inappropriate (*id.* at 9). Second, in the alternative, Plaintiff argues that Defendants have failed to meet their burden of establishing an entitlement to attorneys' fees by failing to address the factors set forth in "LR 54-16" and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (1975). (*Id.* at 9-10.) Plaintiff also argues that the requested fees are excessive and the Court should only consider fees that correspond to the writing and filing of the motion for sanctions and reply. (*Id.* at 11-13.)

In reply, Defendants address the question of the Court's authority by asserting that the Ninth Circuit has validated the award of attorneys' fees under Rule 37(e) so long as the award is compensatory rather than punitive, that Rule 37(b)(2) *requires* an award of fees upon violation of a court order unless the violation was justified, and that the Court may award fees under its inherent authority because it has already found that Plaintiff acted in bad faith. (Doc. 133 at 1-3.) Defendants also argue that it is proper for a party to seek costs and fees after final judgment and that the parties had agreed that Defendants could pursue costs and fees after the Court ruled on Defendants' request for terminating sanctions. (*Id.* at 3-5.) Next, Defendants contend that *Kerr* and LR 54-16 are outdated or inapposite. (*Id.* at 7.) Defendants also assert that their requested fees are reasonable based on the Ninth Circuit's modern lodestar calculation and that Plaintiff has failed to carry *his* burden of rebuttal. (*Id.* at 6-7.) Defendants also dismiss Plaintiff's proposed limitations on recovery as "arbitrary and self-serving" and generally unsupported by legal principle. (*Id.* at 7-10.) Finally, Defendants reassert their initial request that Plaintiff should be made

to post a bond during his appeal and note that Plaintiff did not "oppose or otherwise respond" to that request. (*Id.* at 10-11.)

In the order soliciting supplemental briefing, the Court stated that "it is unclear whether the Court may rely on its inherent authority or Rule 37(b)(2) to impose a monetary sanction—in the form of a fee-shifting award—against Plaintiff based on his destruction of ESI" in light of certain authorities that "suggest[] all requests for sanctions based on the loss of ESI must come under Rule 37(e), which displaces other potential sources of fee-shifting authority." (Doc. 136 at 3.) Accordingly, the Court authorized the parties to file supplemental briefing on that issue, as well as "the related, but distinct, issue" of "when (or whether) attorneys' fees are available under Rule 37(e)." (*Id.*)

In his supplemental brief, Plaintiff argues that Rule 37(e) does, in fact, provide the sole basis to sanction a party for the failure to preserve ESI. (Doc. 139 at 3-4, 6-7.) Plaintiff further argues the monetary sanctions are unavailable under Rule 37(e), at least in a case in which terminating sanctions have been imposed. (*Id.* at 4-6.)

In their supplemental brief, Defendants argue that (1) "Rule 37(e) does *not* displace Rule 37(b) or the Court's inherent authority except for the inherent authority to use certain measures for ESI loss—*i.e.,* the 'severe sanctions' of unfavorable presumptions, adverse inference jury instructions, and case-terminating sanctions of dismissal or default judgment now limited to Rule 37(e)(2)"; and (2) "[a]ttorneys' fees may be awarded under Rule 37(e)(2) in addition to the severe sanctions listed in Rule 37(e)(2)." (Doc. 140 at 2.)

B. **Analysis**

    1. <u>Attorneys' Fees</u>

        a. **The Motion's Validity**

Plaintiff's response raises two case-specific objections to the validity of Defendants' motion: (1) the October 2021 order granting terminating sanctions foreclosed the possibility of a future motion for attorney's fees; and (2) Defendants are foreclosed from seeking attorneys' fees because they did not seek leave to file the motion. (*Id.* at 5.) Both objections are unpersuasive.

First, the Court's October 7, 2021 order did not deny a request for attorneys' fees or otherwise prevent Defendants from seeking fees. In support of his theory that "[t]he Court did not leave the door open for [Defendants] to file a motion for attorneys' fees" (Doc. 131 at 5), Plaintiff cites the Court's comment that "the Court would decline to impose lesser sanctions even if Plaintiff had proposed them . . . . Thus, the Court finds that although it did not impose alternative sanctions before dismissal, such sanctions are 'not necessary' in this case." (Doc. 110 at 32.) Plaintiff's reliance on this passage is misplaced because the Court's analysis was intended to address the "availability of less drastic sanctions" prong of the Ninth Circuit's test for assessing whether to impose dismissal as a sanction. (*Id.* at 29, citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).) That prong is divided into "three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal . . . . But despite all this elaboration of factors . . . it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." (*Id.*) The Court found that Plaintiff's bad faith conduct was so outrageous, and had caused such irreparable damage to critical evidence, that warnings or other forms or lesser sanction could not salvage the litigation. That Plaintiff's conduct warranted the severest possible sanction is certainly not a bar to Defendants' recovery of the attorneys' fees that Plaintiff's misconduct also caused Defendants to incur.

Second, the Court does not take issue with Defendants' briefing approach. On April 22, 2021, the parties advised the Court that "[t]o streamline briefing, the parties agreed (subject to the Court's approval) to focus their initial briefing on whether dismissal is an appropriate sanction and then, depending on the Court's ruling regarding dismissal, questions related to costs and/or lesser sanctions may be determined afterward." (Doc. 73 at 2.) Based on this joint status report, it has always been clear to the Court that motions for attorneys' fees and costs would come after a ruling on the merits of Defendants' request for terminating sanctions. Plaintiff fails to identify any authority suggesting that Defendants *cannot* bring their motion under these procedural circumstances. Defendants,

in contrast, have identified at least one case[1] in which the Ninth Circuit affirmed a district court that addressed a motion for attorneys' fees after a motion for case-terminating sanctions was granted. (Doc. 133 at 5.)

In sum, neither the October 2021 order nor Defendants' own actions prevent Defendants from bringing their motion for attorneys' fees.

### b. **The Court's Authority**

Defendants seek attorneys' fees "pursuant to Fed. R. Civ. P. 37(b)(2)(C) and the Court's inherent authority." (Doc. 122 at 1.) Plaintiff argues that fees are unavailable under these sources of authority. (Doc. 131 at 8-9; Doc. 139.)

Although the Court previously questioned whether it "may rely on its inherent authority or Rule 37(b)(2) to impose a monetary sanction—in the form of a fee-shifting award—against Plaintiff based on his destruction of ESI" in light of "Rule 37(e)'s displacement effect" (Doc. 136 at 3), the Court is persuaded by Defendants' showing in their supplemental brief that Rule 37(e) does not have such a displacement effect here.

The text of Rule 37(e) says nothing about the displacement of other sources of sanctioning authority, but that topic is addressed in the advisory committee notes to the 2015 amendments to Rule 37, which state that the newly amended Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." The Court construes the advisory committee notes as recognizing a displacement effect that precludes the Court's reliance on inherent authority, but only when imposing "certain measures." In context, "certain measures" refers to the four severe sanctions that, pursuant to the 2015 amendments, are now specifically authorized by Rule 37(e)(2)—*i.e.,* an adverse inference, an adverse-inference jury instruction, dismissal of the action, or entry of a default judgment. The Court has no trouble concluding, as it has in prior cases,[2] that

---

[1] *Harkey v. Select Portfolio Servicing*, 2017 WL 2014062, *4 (D. Nev. 2018) ("The same bad faith conduct that motivated the Court to impose the harsh sanction of dismissal is the same conduct that warrants the award of fees and costs against Plaintiff."), *aff'd,* 817 F. App'x 389 (9th Cir. 2020).

[2] *See, e.g.*, *Fed. Trade Comm'n v. Noland*, 2021 WL 3857413, *6 (D. Ariz. 2021) (recognizing Rule 37(e)'s displacement effect in the context of a request for an adverse inference under Rule 37(e)(2)); *Nyerges v. Hillstone Rest. Grp. Inc.*, 2021 WL 3299625,

- 9 -

Rule 37(e) displaces other sources of authority when it comes to requests for those "certain measures." The Ninth Circuit has applied a similar rule of displacement in a case involving a request for terminating sanctions, which is one of the "certain measures" authorized by the 2015 amendments. *Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) ("The detailed language of Rule 37(e) 'therefore foreclose[d] reliance on inherent authority' to determine whether terminating sanctions were appropriate.") (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment). But here, Defendants seek a form of sanction—attorneys' fees—that is *not* explicitly authorized by Rule 37(e). This means there has been no request for the "certain measures" that might otherwise trigger Rule 37(e)'s displacement effect.

In the order soliciting supplemental briefing, the Court also asked the parties to address whether "the implication of" Rule 37(e)'s "exclusive scheme of graduated sanctions" is that "that when a defendant has already succeeded in getting a case thrown out as a terminating sanction under Rule 37(e)(2), that defendant has obtained all of the relief that is necessary to make it whole and should not allowed to seek a follow-on award of attorneys' fees on top of the terminating sanction." (Doc. 136 at 4.) But as discussed in the preceding paragraph, the Court is now persuaded that Rule 37 does not create a fully exclusive scheme of sanctions—instead, it only displaces other sources of authority when it comes to "certain measures." Thus, allowing Defendants to pursue an award of attorneys' fees (which is not a "certain measure") pursuant to the Court's inherent authority or Rule 37(b)(2) would not undermine Rule 37(e)'s text or structure.

With this understanding in mind, the Court turns to Defendants' two proffered sources of authority: inherent authority and Rule 37(b)(2). The Court will focus on the former because it provides the most straightforward path to relief. Courts possess inherent authority to sanction bad-faith conduct by ordering a party to pay the opposition's legal fees, so long as the fees are limited to what was incurred because of the party's misconduct.

---

\*5 (D. Ariz. 2021) (recognizing Rule 37(e)'s displacement effect in the context of a request for a default judgment or other severe sanctions under Rule 37(e)(2)).

- 10 -

*Goodyear Tire & Rubber Co. v. Haegar*, 137 S. Ct. 1178, 1184 (2017). Because the Court has already explicitly found that the "sheer scope of Plaintiff's dishonesty and spoliation efforts" amounted to bad faith (Doc. 110 at 31), it is empowered to award attorneys' fees to Defendants, so long as they are limited to fees incurred because of Plaintiff's misconduct.

### c. **Legal Standard**

"Under its inherent powers, a district court may . . . award sanctions in the form of attorneys' fees against a party who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464 F.3d at 961. "Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Id.* "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*

The Supreme Court recently "clarified the procedural requirements and substantive limitations that apply when a district court imposes sanctions under its inherent authority, rather than pursuant to any statute or rule." *Am. Unites for Kids v. Rosseau*, 985 F.3d 1075, 1081 (9th Cir. 2021). When granting a motion for attorneys' fees under its inherent authority, the Court "can shift only those attorneys' fees incurred because of the misconduct at issue." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186. "The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct." *Id.* at 1187. "[I]n exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint in one fell swoop. . . . In [these] scenarios, a court escapes the grind of segregating individual expense items (a deposition here, a motion there)—or even categories of such items (again, like expert discovery)—but only because all fees in the litigation, or a phase of it, meet the applicable test: They would not have been incurred except for the misconduct." *Id.* at 1187-88. Nevertheless, the Court must be careful to ensure that, when procedural guarantees applicable in criminal cases are absent, shifting of fees is limited to "reimbursing the

victim." *Id.* at 1186.

d. **The Amount Of Fees**

On October 7, 2021, the Court found that Plaintiff violated the Court's October 29, 2020 order, which required Plaintiff to preserve and produce ESI for forensic review. (Doc. 110 at 30.) The Court further found that the scope of Plaintiff's dishonesty and spoliation efforts "amounted to bad faith." (*Id.* at 31.) Thus, all that remains is to decide whether Defendants' requested fees were "incurred because of the misconduct at issue" under *Goodyear Tire*.

Plaintiff's response is, unfortunately, of little help. Plaintiff first insists that Defendants failed to satisfy the requirements in *Kerr* and LR 54-16. (Doc. 131 at 9-10). But as Defendants point out, LR 54-16 (which is a local rule of the District of Nevada) is inapplicable here and *Kerr* has been largely subsumed by a more holistic "lodestar" calculation.[3] *See, e.g.*, *Yahoo!, Inc. v. Net Games*, 329 F. Supp. 2d 1179, 1182 (N.D. Cal. 2004) ("Before the lodestar method was developed, the Ninth Circuit applied the twelve-factor test set forth in [*Kerr*] to determine attorney fee awards in fee-shifting cases. The lodestar method greatly simplified this analysis by limiting the court's consideration to two factors: the reasonableness of the number of hours and the reasonableness of the hourly rate."). Next, Plaintiff argues that "the fees must not include any fees outside those necessary to prepare and file the motion for sanctions, review the opposition and prepare

---

[3] It is not clear whether, when granting attorneys' fees under the Court's inherent authority, the Court must validate the reasonableness of counsel's fee rates in the first place. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1220 (9th Cir. 2003) ("Bumper claims that remand is necessary because the district court did not consider the factors for assessing attorney's fees described in *Kerr*. *Kerr*, however, involved attorney's fees for a party prevailing on a statutory claim, rather than an award pursuant to a district court's inherent power as a sanction for bad faith conduct in filing a motion."). *Goodyear Tire* suggests that courts need only identify a but-for relationship between bad faith and fees. At any rate, to the extent a reasonableness analysis is required, the Court finds that defense counsel's rates are "presumptively reasonable because they are the fees that [Defendants] agreed to pay." *Massage Envy Franchising LLC v. Doc Mktg. LLC*, 2016 WL 5464594, *2 (D. Ariz. 2016). Defendants have submitted proof to this effect. (Doc. 122-2 ¶¶ 20-23.) Beyond mentioning *Kerr* and LR 54-16, Plaintiff does not otherwise dispute the reasonableness of defense counsel's rates beyond the formulaic statement that "Defendants have failed to meet their burden to support its request for attorneys' fees." (Doc. 131 at 10.)

and file a reply brief." (Doc. 131 at 11-12.) But Plaintiff cites no case or other authority in support of this *ipse dixit*, which would profoundly limit the Court's inherent authority to award fees caused by bad-faith misconduct, and Defendants persuasively explain that the only limit on the Court's authority is that the fees awarded must be *caused by* a party's bad faith. (Doc. 133 at 8.) Although Plaintiff objects to large swaths of proposed fees (because they do not arise from writing or filing the brief and reply), he does not raise the sort of precise objections that would help the Court understand whether a given line item was, or was not, directly caused by Plaintiff's bad-faith misconduct.

Upon reviewing Defendants' detailed records (Doc. 122-2 at 33-64), and without the meaningful assistance of Plaintiff, the Court finds that Defendants' requested fees fairly compensate Defendants for work that would not have been necessary but-for Plaintiff's decision to violate the October 29, 2020 order. The Court further finds that this is an "exceptional case," where all of the identified fees that were incurred after October 29, 2020 may be shifted in "one fell swoop" because they "would not have been incurred but for [Plaintiff's] misconduct." *Goodyear Tire*, 137 S. Ct. at 1187-88.

    2. <u>Supersedeas Bond</u>

Defendants ask that Plaintiff be ordered to post a supersedeas bond within 60 days that would cover 125% of the requested fee award, plus another $150,000 to cover Defendants' anticipated fees and costs on appeal. (Doc. 122 at 12-13.) Plaintiff does not respond to these requests, and in reply, Defendants ask the Court to grant the undisputed requests because Plaintiff "bore the burden of demonstrating reasons from departing from this usual requirement of a full security supersedeas bond." (Doc. 133 at 11.)

Perhaps the Court is overlooking something obvious, but the first part of Defendants' request—to require Plaintiff to post a supersedeas bond to cover the requested fee award—is confusing. As explained in the final portion of this order, the $296,490.50 fee award to Defendants will become due and payable in 30 days. It will not be necessary to issue a separate judgment. *See* Fed. R. Civ. P. 58(a)(3) ("Every judgment . . . must be set out in a separate document, but a separate document is not required for an order

disposing of a motion . . . for attorney's fees under Rule 54."). *See also Hill v. Clark*, 2012 WL 13018385, *4 (N.D. Ga. 2012) (identifying various factors that "strongly impl[y] that Rule 54 applies to a motion seeking attorney's fees under the court's inherent power"). There is a strong argument that, once that 30-day period elapses, Defendants will be free to collect on the fee award despite Plaintiff's pending appeal of the October 2021 order granting terminating sanctions and without regard to whether Plaintiff also appeals this fee order. *See* Fed. R. Civ. P. 62(a). If Plaintiff wished to avoid such collection efforts, *he* would need to ask this Court to stay the enforceability of the fee award pending appeal or, perhaps, post a supersedeas bond as contemplated by Rule 62(b). *See generally Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 & n.6 (9th Cir. 2001) (noting that, once the temporary stay of execution created by Rule 62(a) expires, "a prevailing plaintiff is entitled to execute upon a judgment" unless the appellant "obtain[s] a formal stay of the judgment pending appeal by posting a supersedeas bond"). *But see Rindlisbacher v. Steinway & Sons Inc.*, 2021 WL 2407593, *1 (D. Ariz. 2021) (expressing no view as to whether a bond is needed to stay collection efforts on an order awarding attorneys' fees). But Plaintiff has done neither of those things. Given this backdrop, the Court sees no reason to require Plaintiff to post a bond to cover the fee award. It is his choice whether to expose himself to the risk of collection while he is pursuing an appeal and he is apparently willing to bear that risk here.

As for the second part of Defendants' request—to order Plaintiff to post a bond to cover Defendants' anticipated litigation costs on appeal—Defendants are correct that the Court has the discretion to require such a bond. *Ingenuity13 LLC v. Doe*, 651 F. App'x 716, 720-21 (9th Cir. 2016). Nevertheless, the Court declines to require one here. In *Ingenuity13*, the bond was imposed in part because the sanctioned parties had "lied to other courts about their ability to pay sanctions" and "failed to pay their own attorney's fees in this case," and thus a bond was necessary to ensure that the prevailing party had an adequate financial incentive to defend the sanction award on appeal: "Without hope of receiving attorney's fees for defending sanctions on appeal, Doe and other victims of

abusive litigation would be left with no remedy. Doe would likely not defend the sanctions in appellate court, and thus would lose the only compensation—attorney's fees at the district court level—that he was awarded." *Id.* Here, in contrast, Defendants have not attempted to show that Plaintiff is experiencing financial difficulty or would otherwise be unable to pay an additional fee award imposed following an unsuccessful appeal. Nor did Plaintiff raise any arguments about financial inability to pay in his response to the fee request. For these reasons, Defendants' bond-related requests are denied.

II. Motion To Modify The Clerk's Judgment On Taxation Of Costs

A. **Background**

On November 18, 2021, Defendants filed their bill of costs. (Doc. 121.) On January 25, 2022, Plaintiff objected. (Doc. 132.) In compliance with Local Rule 54.1, Defendants did not reply.

On February 18, 2022, the Clerk taxed only a portion of the requested costs for Defendants and against Plaintiff. (Doc. 134.) The Clerk denied claims for invoices submitted by TERIS (Nos. 75752, 75898, 76120, 76311, 76466, and 76843) and Peak Forensics (No. 2101) because "[p]ursuant to [2]8 U.S.C. § 1920, the TERIS fees were not for Court appointed experts." (*Id.* at 1-2.)

On February 24, 2022, Defendants filed a motion to modify the Clerk's judgment on taxation of costs in the amount of $66,973.62. (Doc. 135.) Plaintiff did not respond to the motion. The Court will, however, consider any relevant objections stated in his January 25, 2022 filing. (Doc. 132.)

B. **The Parties' Arguments**

Plaintiff asserts that "Teris was not a court appointed expert" so "Defendants should not recover the fees from Teris." (Doc. 132 at 5.) Plaintiff argues that the Court recognized only a single court-appointed expert, which was Peak Forensics, in its October 29, 2020 order. (*Id.*) In the alternative, Plaintiff asserts that "it is hard to tell what many of Teris fees are for" and "[t]here is no declaration from Defendants, their counsel, or Teris that they were a court appointed expert." (*Id.*)

- 15 -

Defendants first contend that the Clerk mistakenly categorized Invoice No. 2101 as from TERIS rather than from Peak Forensics and ask for that invoice to be taxed alongside the other Peak Forensics costs. (Doc. 135 at 4.) Defendants argue that the remaining costs can be taxed under 28 U.S.C. § 1920(4), § 1920(6), or the parties' agreement. Defendants assert that "most" of the disputed costs are taxable under § 1920(4), which allows for "costs of making copies of any materials where copies are necessarily obtained for use in the case," because "TERIS was specifically appointed pursuant to the Court's October 29, 2020 Order to support Peak Forensics to, among other things, forensically collect (*i.e.,* make a bit-for-bit mirror image copy of) [Plaintiff's] electronic media and make that ESI available for ediscovery." (*Id.* at 6.) Defendants next assert that all of the disputed costs are taxable under 28 U.S.C. § 1920(6), which allows for the "compensation of court appointed experts," because "TERIS was *appointed with* Peak Forensics, pursuant to Paragraph 2 of the October 29, 2020 order." (*Id.* at 7.) Finally, Defendants argue that Plaintiff specifically agreed that although Defendants would initially pay the expert's fees, Defendants could seek recovery of those expenses if Plaintiff were to obstruct the investigation. (*Id.* at 8-9 [citing Doc. 61 ¶ 9].)

    C.    **Legal Standard**

"In determining the scope of taxable costs, courts are limited to the items enumerated in [28 U.S.C.] § 1920 and items authorized by contract or statute." *In re Apollo Grp., Inc. Sec. Litig.*, 2009 WL 2169178, *2 (D. Ariz. 2009). Section 1920 authorizes the court to tax, among other things, the "costs of making copies of any materials where copies are necessarily obtained for use in the case" as well as "compensation of court appointed experts." 28 U.S.C. § 1920(4), (6).

Federal Rule of Civil Procedure 54(d) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." "Rule 54(d)(1) creates a presumption that favors the prevailing party's recovery of authorized costs." *In re Apollo Group*, 2009 WL 2169178 at *2. The Ninth Circuit describes the presumption in favor of awarding costs to the

prevailing party as "strong," *Miles v. California*, 320 F.3d 986, 988 (9th Cir. 2003), and has explained that "a district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

D. **Analysis**

First, the Court agrees that Invoice No. 2101 was denied in error. The Clerk categorized it as "TERIS fee," but it is an invoice from Peak Forensics. (Doc. 121-2 at 19.) It is undisputed that Peak Forensics is a court-appointed expert, so costs associated with its appointment may be taxed under 28 U.S.C. § 1920(6).

Second, the Court finds that the invoices from TERIS are taxable under 28 U.S.C. § 1920(6). The parties stipulated that Defendants would be granted the sole discretion to select the expert of their choice. (Doc. 61 at 3.) The parties agreed that the expert "shall be allowed to hire other outside support if necessary to Forensically Collect from Plaintiff's Electronic Media, so long as the outside support also signs and agrees to be bound by the Stipulated Protective Order, as modified by this Second Addendum." (*Id.*) The Court granted the joint motion that stipulated to the appointment of experts. (*Id.* at 1.) Plaintiff selected Peak Forensics, as supported by TERIS. (Doc. 78-17 at 4.)

Although this Court's order seemed to distinguish between an "expert" and "outside support," when the outside support is *necessary* to allow the expert to satisfy the Court's order, those expenses are taxable as "compensation of court appointed experts" under 28 U.S.C § 1920(6). There is no legally significant difference between a court-appointed expert who relies on support staff within his organization, and charges for it, and a court-appointed expert who relies on support that is invoiced separately—especially when the Court's order anticipates that such support will be necessary.

Finally, Plaintiff refers to certain unreasonable and ambiguous TERIS expenses and argues that those expenses should be disallowed. This vague assertion is not a sufficiently persuasive reason to deny costs and does not defeat Rule 54(d)'s strong presumption in

favor of awarding costs to a prevailing party.

Accordingly,

**IT IS ORDERED** that Defendants' motion for award of attorneys' fees (Doc. 122) is **granted in part and denied in part**. Plaintiff is ordered to pay $296,490.50 to Defendants, due within 30 days of the issuance of this order.

**IT IS FURTHER ORDERED** that Defendants' motion to modify the clerk's judgment on taxation of costs (Doc. 135) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk's judgment on taxation of costs (Doc. 134) be modified to add the following costs to the $29,210.50 in costs previously awarded by the Clerk:

- $36,013.12 for TERIS's costs; and
- $1,750.00 for Peak Forensics' costs reflected in Invoice No. 2101.

**IT IS FURTHER ORDERED** that, with these modifications, total costs are taxed for Defendants and against Plaintiff in the amount of $66,973.62.

Dated this 19th day of May, 2022.

Dominic W. Lanza
United States District Judge